### CHARLES W. MILLEN v. S. M. YOUNG, ADMR.

1. WHEN PROBATE COURT CANNOT OPEN UP GUARDIAN'S ACCOUNT.

The probate court has no power after an account rendered by the guardian of an imbecile has been passed upon in due form, at a subsequent date or year, upon mere motion, suggestion or request, of the heirs of such imbecile, charging neither fraud, mistake nor misconduct, to open up such account, place the matter in *statu quo*, and impose upon the guardian the duty of going back and again establishing every item of debit contained in his account.

2. WHEN PROBATE COURT HAS POWER TO REFORM AND CORRECT GUARDIAN'S ACCOUNT.

But any such settlement made by such guardian, at any time within two years after the appointment of another guardian, or after the disability of such ward may be removed, or said ward may die, may be opened and reviewed upon motion of the guardian, or heirs of such ward, and the accounts attacked, upon the showing of good reason therefor, and if it shall appear that any mistake or fraud entered into the settlement, to that extent, and to that extent only, may be reformed and corrected.

SCRIBNER, J.

In the case of C. W. Millen, guardian, v. S. M. Young, there are two cases in error here, identical in their facts and in the questions of law, and they will be disposed of together, as they were argued together.

In this case, or these cases, the plaintiff in error seeks to reverse the judgment of the court of common pleas, confirming certain orders made by the probate court upon applications made in that court to open certain accounts of the plaintiff in error, the guardian of Fanny M. Post, imbecile, which had been settled, or passed upon and settled theretofore by the probate court of this county.

The facts are briefly these: Charles W. Millen as guardian of Fanny M. Post, imbecile, files his first partial account for settlement in the probate court of this county on March 21, 1888. I have not the date of his appointment, but that I do not regard as important. This account was passed upon and approved by the probate court on April 26, 1888. The entry of that action of the probate court reads as follows:

"This day came Charles W. Millen, guardian of Fanny M. Post, and files herein his account, as such guardian for a partial settlement. Notice by publication ordered. Thursday, the 26th day of April, A. D., 1888, is set for the hearing of said accounts, at which time the matter is continued."

"April 26, 1888. Notice of the filing of the accounts of Chas. W. Millen, guardian of Fanny M. Post, heretofore filed for partial settlement, having been duly given by publication in the Norwalk Reflector, a newspaper of this county, and this being the day named therein for the hearing of said accounts, the same came on to be heard, and no exceptions thereto being filed, and the court having carefully examined the same, and finding them in all things true and correct, desires that the same be, and they are hereby confirmed and settled. And the court further find a balance due, in the hands of said guardian, $4,283.22."

The said guardian files his second partial account for settlement in the same court on January 17, 1891. This account was approved February 7, 1891, in terms similar, but not identical with those which have been read in the action of the court upon the first account.

The ward, Fanny M. Post, died in 1891, intestate, leaving W. C. Bailey, E. J. Bailey, Caroline M. Burdick and Daniel S. Platt her heirs at law. Stephen M. Young was duly appointed administrator of her estate, and qualified as such on December 30, 1891.

The heirs and administrator of the said Fanny M. Post each filed motions to open up both of the settlements before mentioned, and for leave to file exceptions to those accounts.

The entry made by the court upon the motions to open up the accounts, is as follows: "December 31, 1891. This day the heirs of Fanny M. Post, deceased, and S. M. Young, administrator of the estate of the said Fanny M. Post, deceased, file herein, motions to open the first and second partial accounts of C W. Millen, guardian of Fanny M. Post, whereupon the court ordered that said guardian be given fifteen days' notice in each case, and sets the hearing of this matter for January 14, 1892, at 9 o'clock, A. M."

On January 14, 1892, the day to which this case was adjourned, this entry was made in the journal entry of the court: "This cause came on to be heard, and is continued until such time as the parties agree upon."

Millen v. Young, Admr.

March 16, 1892, this entry was made: "This day came C. W. Millen and files herein a motion to strike from the files, the motions heretofore filed to open up the first and second partial accounts of C. W. Millen, as guardian of Fanny M. Post."

At the January term—on April 7, 1892, the motion of the present plaintiff in error, C. W. Millen, guardian, to dismiss this motion, or these motions, was overruled by the court, and on the same day an order was made opening up both partial settlements, and granting leave to the administrator and the heirs to file exceptions thereto, and this is the order that was made by the court: "April 7, 1892. This cause coming on further to be heard on the motion of the heirs of Fanny M. Post, deceased, ask that the first partial settlement of the accounts of C. W. Millen, guardian of Fanny M. Post, be opened up, and that they be permitted to file exceptions thereto; and the same was submitted upon record without evidence. In consideration whereof, the court do allow said motion and said partial settlements of accounts is hereby ordered opened up, and said heirs are granted leave to file exceptions to said partial accounts, to which order said C. W. Millen, guardian of Fanny M. Post, by his counsel, excepts."

The same order was made as to the second partial account. Both settlements were set aside, and the administrator and the heirs at law were granted leave to file their exceptions. The exceptions by these parties seeking to attack the accounts, were filed on April 16, 1892, the order, as appearing of record having been made on the 7th of the same month.

On April 21, 1892, being five days after exceptions were filed, and some fourteen days after the order, opening up the accounts had been made, the guardian filed a petition in error in the court of common pleas to reverse this action on the part of the probate court. These orders of the probate court were confirmed at the May term, 1892. Thereupon, petitions in error were filed in this court on July 6, 1892, to reverse the action of the common pleas court, affirming the order of the probate court, and also to reverse the orders of the probate court which are complained of

Upon this condition of the record, the question as presented to us, and by the law, is as to whether or not the probate court erred in granting the motions of the administrator and the heirs of Fanny M. Post to open up the accounts, and to permit them to file their exceptions thereto. The question so presented, calls for a consideration of the various provisions of the statute regulating matters in regard to the appointment of administrators, and the settlement of accounts of lunatics, idiots and imbeciles.

Section 6302, Rev. Stat., reads as follows: "The probate court, upon satisfactory proof that any person resident of the county, or having a legal settlement in any township thereof, is an idiot, imbecile, or lunatic, shall appoint a guardian for such person, which guardian shall, by virtue of such appointment, be the guardian of the minor children of his ward, unless the court shall appoint some other person as their guardian; an imbecile in this chapter, shall be understood to mean a person who, not born idiotic, has become so; provided that no such guardian be appointed until at least three days' notice to the persons next of kin resident of the county of such person is given to attend at the same time and place, which notice shall be served by delivering to each person therein named, a copy thereof, or by leaving such copy at his usual place of residence."

Now, appended to this section is found this language—by the proviso of the act of 1872, 69 O. L., 174: "The appointment by the probate court of a guardian for an imbecile is to be regarded only as *prima facie* evidence of the imbecility." That proviso it may be remarked is not contained in the section, as it now stands in the statute. "The fact as to such imbecility may be inquired into by the alleged imbecile, in an action brought by him to enjoin the guardian from interfering with the control and management of his property. In the revision of this statute, 75 O. L., 927, sec. 49, this provision was omitted. "Held, that the omission did not give an appointment made under the original act a more conclusive effect than it had before such revision; Messenger v. Bliss, 35 O. S., 587.

In a case which came before us in Erie county a few years since, we had occasion to consider the question as to whether or not the appointment by the probate court, of a guardian for an alleged imbecile, the court in making the appointment, finding that the ward was an imbecile, was conclusive evidence of imbecility, or whether it was to be regarded as *prima facie* only.

In that case, the ward had made a last will and testament during the existence of the order finding that he was an imbecile and appointing a guardian for him. In that last will and testament he had disposed of a large estate. The will was contested and it was argued that by necessity, he was not competent to make a will, and it was urged upon us that the finding of the judgment of the probate court of Stark county where a guardian had been appointed, was conclusive to set aside in the same manner, upon the fact of the imbecility on the part of the ward, or, testator in the case presented, and after careful consideration of the subject, and examination of the cases cited in hand, we were of the opinion, and so held, that the appointment by the court of a guardian for an alleged imbecile was *prima facie* evidence only of the fact of imbecility upon which the appointment was based, and evidence having been introduced tending to show that the ward was entirely *compos mentis*—competent to make a will, at the time of making of the will (it was not very long after the appointment of a guardian for him, that the court, or rather the finding by the jury that the will in controversy was the will of an alleged testator), we would not disturb the verdict upon the mere ground alleged, that the action of the probate court of Stark county was conclusive upon the question of mental capacity, even while it was in force.

Section 6304 is the one under which the principal difficulty arises at the termination of this case. The laws relating to guardians for minors and their wards, and all laws pointing out the duties, rights and liabilities of such guardian for idiots, imbeciles and lunatics and their children except as otherwise specially provided, shall be applicable for guardians of idiots, imbeciles and lunatics and their children, except as otherwise especially provided; but in the settlement of the accounts of such guardians no voucher shall be received from, or allowed as a credit to the guardian of any idiot, imbecile or lunatic, which shall be signed, or purport to be signed by such idiot, imbecile or lunatic; and provided, that any settlement of the account of any such guardian heretofore made, in which any such receipt shall have been allowed as credit to such guardian, shall be held and deemed absolutely null and void, and any settlement made by any such guardian shall, at any time, within two years after the appointment of another guardian, or after the disability of such ward may be removed, or such ward may die, be opened up and

Millen v. Young, Admr.

reviewed, on the motion of such newly appointed guardian, or legal representative, or of any other interested person, notice of which motion shall be given by publication, or otherwise, as the probate judge maydirect.''

It will be seen by the terms of this section, in the first place, that the legislature has provided that all laws relating to guardians for minors and their wards, and all laws pointing out the duties, rights and liabilities of such guardians and their sureties in force for the time being shall be applicable to guardians for idiots, imbeciles and lunatics and their children, except as otherwise specially provided.

Now, the laws relating to the matters recited in that portion of the section which I have just read are to be applicable to the guardians of idiots, imbeciles and lunatics and their children, except as otherwise specially provided. We are to inquire then, wherein provisions, as made by the legislature for the administration of the affairs of an imbecile, a lunatic, or an idiot, differ from the provisions of the statute relating to the guardians for minors and their wards.

We find in this section, in the first place, that in the settlement of the account of such guardian, no voucher shall be received from or allowed as a credit to the guardian of any idiot, imbecile or lunatic, which shall be signed, or purport to be signed by such idiot, imbecile or lunatic.

In this respect, I take it, the law is different from that which is applicable to the guardians of minors, because I can see no good reason, or know of none, why a receipt, or voucher signed by a minor may not be received in the settlement of the accounts of the guardian of a minor. Here it is expressly provided that no such receipt shall be received in the settlement of the accounts of the guardian of an idiot, imbecile, or alunatic.

Then it is further provided here that in the settlement of the accounts of any such guardian heretofore made—that is, of course, prior to the adoption of this statute—in the settlement of the account of any such guardian heretofore made in which any such receipt shall have been allowed as a credit to such guardian, shall be held and deemed absolutely null and void. That is applicable to the settlement of accounts that have been previously had in which any such receipts have been received and acted upon by the probate court.

By this provison of the statute, it declares that any settlement in which any such receipt is entered, shall be deemed null and void; in other words, such settlement is rendered *ipso facto*, the mere fact of taking into account any such receipt has existed.

Provided that any settlement of the accounts of any such guardian —now, this is the provision which we are called upon to construe more particularly. ''And any settlement made by any such guardian shall, at any time, within two years after the appointment of another guardian, or after the disability of such ward may be removed, or such ward may die, be opened up and reviewed, on the motion of such newly appointed guardian, or legal representative, or of any other interested person, notice of which motion shall be given by publication, etc.''

This ward died in 1891. The first partial settlement was made in 1888. The second partial settlement was made in 1891. The first and second partial settlement, or account was settled in February, 1891, and the ward died sometime thereafter, during the same year.

This motion to open up this partial settlement was filed on December 30, 1891, so that they were filed within two years after the death of the ward.

Now, the principal question that arises here is this: Is it the right of the heirs of the deceased ward, or of the administrator of the deceased ward, if a new guardian shall have been appointed within two years, is it the right of such new guardian within two years after his appointment, upon the mere application, or request, so to speak, that the accounts shall be opened up and reviewed—is it his right, by simply making the motion that these be opened up and reviewed, and entitled to an order in accordance with his motion?

Now, here is one of the motions that was filed on December 30, 1891. This was the motion to open up the first partial settlement. They are all alike in that regard so that by this one we understand precisely what is contained in them all.

"In the matter of the guardianship of Fanny M. Post. C. W. Millen, guardian. Probate Court, Huron county, Ohio. Motion to open up the first partial settlement of said guardian. S. M. Young represents that Fanny M. Post died in the summer of 1891, and he is the duly appointed and qualified administrator of her estate. Said S. M. Young as said administrator, moves the court that the first account filed by C. W. Millen in this court on the 21st day of March, 1888, for partial settlement, as guardian of the person and estate of said Fanny M. Post, which account was approved by this court on April 26, 1888, be opened up for the reason that said S. M. Young, as said administrator, desires to file exceptions to said account, and to dispute in substantial particulars, the credit claimed by said guardian therein, and the account with which he charges himself."

Now, what is the reason that he assigns in this motion upon which he asks the court to set aside this partial settlement made in 1888? It is that he desires to file exceptions to said account, and to dispute in substantial particulars the credits claimed by said guardian therein, and the account with which he charges himself.

Let it be observed that he does not offer in this motion—he does not claim, nor suggest that any fraud has been practiced, or that any mistake is entered into the settlement; but he simply says to the court, as a reason why he calls upon the court to set aside this settlement, that he desires to dispute the credits—to dispute the account in terms which I have just read, and the court adopted as correct the view upon which that motion is based, makes the order which is complained of which I will again read: "April 7, 1892. This cause coming on further to be heard on motion of the heirs of Fanny M. Post, deceased, asking that the first partial settlement of the accounts of C. W. Millen, guardian of Fanny M. Post, be opened up, and that they be permitted to file exceptions thereto, and the same was submitted on the record without evidence. In consideration whereof, the court do allow said motion, and said partial settlement of the accounts is hereby ordered opened up, and said heirs are granted leave to file their exceptions to said partial account."

The record, it will be observed, recites that this application was acted upon without evidence. We very much doubt whether it is competent to reserve exceptions by an entry in a journal showing that no evidence was submitted. We think that the proper mode of preserving any rights that parties have in the matter, or in a matter of this kind is to bring upon record, by a bill of exceptions, the fact that no evidence is submitted. It was so held in Erie county not long since where the journal recited that a case had been submitted to the jury without evidence. There was nothing but the recital in the journal entry to show

that no evidence had been submitted to the jury, and upon authority, we were of the opinion in that case that we could not regard such a statement in the journal entry as of any effect. That is, there is no finding in this order of the probate court, granting this motion to set aside the settlement which has been made, that any improper thing, or any impropriety existed in the settlement of the account; that there was anything wrong in his account; that there were any false, or improper charges, or any improper conduct on the part of the guardian in conducting the affairs of the ward, or in rendering his accounts for settlement. But the court, upon the administrator and the heirs simply saying to the court that they desire to dispute the account and for that reason ask that it be opened up, and they be permitted to file exceptions thereto, assuming that it was their right to have the account opened whenever they chose to assert that right and granted the request as a matter of right to them, on the simple suggestion, and for the reason that they desire to controvert it, gave them leave to file their exceptions to the account, which were subsequently on the 16th of the month filed.

Now, the important question arises right here, whether, after an account, rendered by the guardian of an imbecile has been passed upon in due form by a court having jurisdiction exclusively over the matter —whether it was intended by the statute regulating the conduct of the affairs of an imbecile—whether the court has the power, at a subsequent day, or a subsequent year, upon the mere motion, suggestion, or request of the heirs of an imbecile, or of a ward, to open up the account, place the matter in *statu quo*, and impose upon the guardian the duty of going back and establishing by evidence every item of debit which was contained in his account. It would impose a very serious hardship upon the guardian and places him in this condition. We must confess that our inclination strongly is to hold that the statute shall not receive the construction that would place the guardian in this condition unless we are constrained to do so by the strict language of the law The guardian in 1888 filed his account. It is true that it is an account of an imbecile— of the administration of the affairs of an imbecile; that is true, but nevertheless, it will be seen by other provisions of the statute that it is contemplated that an imbecile, or the friends of an imbecile may act in his behalf, if occasion would seem to require it. But he has filed his account with the proper tribunal. Notice of the filing of the account has been duly given, and the time when it will be passed upon has been given and the court charged by the most solemn obligation devolving upon a public officer to see to it that the interests of the ward, especially of an imbecile ward are properly protected and regarded; has examined that account; has examined the voucher presented to submit the account; perchance, has examined the guardian himself, as he is fully warranted in doing, to ascertain from him all the facts in the matter that might be necessary for him to understand in order to determine whether the ward has been justly dealt with. He passed upon the account and approved it and makes an entry accordingly.

Four years afterwards, the ward having died, and an administrator having been appointed, that administrator and the heirs come in and simply say to the court, charging nothing against the guardian, neither fraud, nor mistake, nor misconduct, and simply suggest to the court that they desire to dispute that account and they call upon the court to set aside the settlement that has been made, thereby devolving upon the guardian the duty of, or the responsibility—imposed upon him the

obligation of going forward step by step, and establish his account precisely as if the court had never acted upon it. Perchance a witness may be dead.

Perchance the circumstances may render it not only difficult but impossible for him to produce testimony that is of vital importance in sustaining his account. That is the case that was made here. The court, upon the mere application—a mere request, granted the order that was asked for and set the account down for a second hearing. More than this, in the first account, items may be, and perhaps have been rendered for expenditure in nursing and in boarding the ward that have been submitted to the court passing upon that account as to the reasonableness of those charges, and a subsequent court, four years afterward might differ with the original court as to whether those charges were reasonable or not. A subsequent court which is called upon to pass upon the account, and to act as a court of review might say, it is true that my predecessor, in passing upon this account, deemed these charges just and reasonable and approved them, but in my judgment, they were too high; I don't think it was worth as much to board this ward as the probate judge who passed upon this account originally, thought, and I don't think that the charge for nursing is reasonable, even though my predecessor who passed upon this first, may have thought so, and I think the charge should be reduced according to what in my view and judgment would be reasonable and proper, under the circumstances so that, upon a rehearing of the account in such a case, the judge or court who may sit upon that second hearing, upon a mere matter of difference in opinion as to the reasonableness of the charges, may impose upon a guardian the necessity of relying upon the first judgment—or rather the guardian, relying upon this first judgment of the probate judge in regard to this first partial account, has gone right along and continued to pay the sums which the first judge, upon the first settlement, approved; under such circumstances the guardian might find himself in a predicament for having paid charges which were approved by the probate court whose duty it was to protect the interests of the ward, which, upon a rehearing, such as is claimed for here, may be found to be entirely inadequate— entirely excessive.

Now, let us look a little to the legislation upon this subject, and determine whether or not this statute requires the construction which is claimed for it.

Commencing with sec. 6328 and including all the secs. to 6332, we find the provision relating to the trustees of non-resident imbeciles, idiots, etc.

Now, one would naturally think that if a resident imbecile needed special care and protection, for a much stronger reason, a non-resident imbecile who perhaps had no friends present to look after her interests— that the interest of the non-resident imbecile would need special care and protection.

Section 6328, Rev. Stat., reads: "Any trustee of any non-resident idiot, imbecile, or lunatic, appointed as aforesaid, and any trustee heretofore or hereafter created by any last will or deed, or appointed by any competent authority, to execute any trust created by any such last will or deed shall, as often as once each two years, render an account of the execution of his said trust, to the probate court of the county in which he was appointed, or in which such last will or deed may be recorded, in the

Millen v. Young, Admr.

manner provided by law for the settlement of the accounts of executors and administrators; provided, this section shall not apply in any case in which the will or deed creating such trust designates any other tribunal for the settlement of the trust, or in which any other tribunal shall have acquired jurisdiction."

Section 6331, Rev. Stat., reads as follows: "The determination of the probate court on any such settlement, whether final or intermediate, may be appealed from in the manner provided for an appeal from said court on the settlement of the accounts of executors and administrators, and the like proceedings shall be had on such appeal, and the result of such proceedings on appeal certified back to the probate court."

The statute seems to contemplate that there may be cases at least, in which an imbecile may have sufficient judgment to exercise his rights of appeal, or if not, some friend in his behalf may exercise that privilege, "and the like proceeding shall be had on such appeal, and the result of such proceedings on appeal certified back to the probate court."

Section 6332, Rev. Stat., reads as follows: The determination of the probate court on any such settlement, shall have the same force and effect as the like determination as to the account of an administrator or executor; and when an account is settled in the absence of any person adversely interested, and without actual notice to him, the account may be opened on his filing exceptions to the account, at any time within eight months thereafter; and upon any settlement of an account by a trustee, all his former accounts may be so far opened as to correct any mistake or error therein, excepting that any matter of dispute between two parties, which had been previously heard and determined by the court, shall not be again brought in question by either of the same parties without leave of the court."

We find, by these provisions of the statute that the trustee of a non-resident imbecile is to be regarded, so far as the question herein presented, standing precisely in the attitude of a guardian of a non-resident imbecile—the trustee of a non-resident imbecile where the determination of the probate court, on his settlement, and from any settement which is made, or required by a provision of the section, is protected precisely as an administrator or executor of an estate is protected, where the accounts have been settled by the probate court.

But, as I have read, it is provided that when an account is settled in the absence of any person adversely interested without actual notice to him, the account may be opened upon his filing exceptions to the account at any time within eight months thereafter. Any person may come in who has not had notice and whose interest may be affected—may come in within eight months after the filing of the settement of his account and have that account opened, and upon any settlement of an account by a trustee, all his former accounts may be so far opened—as to what? As to correct any mistake or error therein—may be opened, but with that exception, they may not be opened upon the mere application of a party interested—his former accounts which have been settled may not be absolutely set aside and a burden imposed upon the trustee to go forward and prove his account precisely as if they had never been acted upon. A party interested has the right to come in and impeach an account, and the settlement that has been made in so far as he may conclusively impeach that account. To that extent, and no further, may it be reformed and restated.

Now, that is as to the trustee of an imbecile—a non-resident imbecile who should certainly have as much, if not more protection than a resident imbecile.

Now, as to the guardianship of a minor, sec. 6289, Rev. Stat., reads as follows: "The settlement made in the probate court of the accounts of a guardian shall be final between him and his ward, unless an appeal be taken therefrom to the court of common pleas in the manner provided by law; saving, however, to subsequent guardians during the minority of his ward, or to any such ward, the right of opening and reviewing such settlements for fraud or manifest mistake by civil action in the court of common pleas of the county in which such settlement was made, or the county where such former guardian may reside when the petition is filed at the option of the plaintiff in such action, at any time within two years after the said ward shall arrive at full age."

It will be observed here that there is reserved to a minor the right to impeach an account of his guardian and he may exercise that right at any time within two years after he reaches his majority; but how is he to do it? The right is saved to him of opening and reviewing such settlement for either a manifest mistake by civil action in the court of common pleas in the county in which such settlement was made, or the county where such guardian may reside when the petition is filed; but he cannot go into the probate court and say, "Your honor, please, I request that this settlement may be set aside beacuse I want to dispute the account, and thereby have the settlement set aside and file his exceptions and then devolve upon the guardian the duty and responsibility of going forward and re-establishing his account. He cannot do that; neither can a non-resident imbecile do that under the provisions of this statute. He may attack the accounts which have been settled in so far as he can make it appear that there is fraud, or manifest mistake, and he may have them reformed.

Section 6187, Rev. Stat., may reflect some light upon this statute relating to the settlement of administrators. Section 6187, Rev. Stat., reads as follows: "When an account is settled in the absence of any person adversely interested, and without actual notice to him, the account may be opened, on his filing exceptions to the account at any time within eight months thereafter; and upon every settlement of an account by an executor or administrator, all his former accounts may be so far opened as to correct any mistake or error therein." And the same provision is here found as in the section relating to the settlement of the accounts of a non-resident imbecile; "excepting that any matter of dispute between two parties, which had been previously heard and determined by the court, shall not be again brought into question by either of the same parties without leave of the court."

Now, to go back again to sec. 6304, Rev. Stat., we find that all laws relating to guardians for minors, and sec. 6289, relating to the settlement of the accounts of guardians of minors, and all laws pointing out the duties, rights and liabilities of any such guardians and their sureties in force for the time being shall be applicable to guardians for idiots, imbeciles and lunatics and their children.

Now, the provisions which has already been read and commented upon, namely, any settlement made by any such guardian shall at any time within two years after the appointment of another guardian, or after the disability of such ward may be removed, or said ward may die, be opened and reviewed upon the motion of said duly appointed guardian,

legal representative, or any other person—interested person gives, as we hold, to the administrator, and the newly appointed guardian and the heirs of the ward who is deceased, the right to come in, within the period limited, and attack the accounts which have been partially settled, upon the showing of good reason therefor, and if upon the showing of the parties attacking the accounts, it shall be made to appear that any mistake or fraud is entered into, the settlement, to that extent, and to that extent only, may be reformed and corrected.

This being our view of the case, after very careful consideration of it—and we have devoted a good deal of time and investigation to this question—it follows that the action of the probate court in setting aside absolutely, these partial settlements that have been made—one in 1888, and the other in 1891—without any showing whatever, on the mere request of the heirs and the administrator as a simple matter of right— we think in that particular, the probate court erred, and that the judgment of the probate court making this order should have been reversed, and that the court of common pleas erred in confirming this order and judgment of the probate court, and for that reason, the judgment of the court of common pleas will be reversed, and this court proceed to render such a judgment as the court of common pleas should have rendered, and reverse the orders of the probate and remand all further proceedings to the probate court for a further hearing.

*G. T. Stewart* and *C. L. Kennan*, for plaintiff in error.

*Andrews Bros.*, for defendant in error.

---

## ELECTION EXPENSES.

[Clark Circuit Court, February, 1898.]

Adams, Shearer and Wilson, JJ.

(Judge Adams of the Fifth Circuit taking the place of Judge Summers.)

STATE EX REL. PROSECUTING ATTORNEY V. GOOD.

1. PAYMENT OF MONEY TO CAMPAIGN COMMITTEE—QUESTION OF AGENCY IS QUESTION OF FACT.

While a candidate may pay an assessment to the committee of his party, and have nothing further to do with the management and conduct of his campaign, and then the committee, or the members thereof would not be his agents in the management of his campaign, yet the question of agency is a question of fact, and a candidate for an office can make the regular chosen committees of his party his agents in the management of his campaign for that office.

2. PAYMENT OF MONEY IN EXCESS OF AMOUNT ALLOWED BY LAW BY AGENTS AND FRIENDS RENDERS THE ELECTION VOID.

It makes no difference, so far as the law is concerned, whether the candidate paid any money directly and out of his own pocket, or whether it was paid for him and for his benefit by his friends and agents. If the amount thus paid out exceeds the amount allowed by law as the limit of his expenses in his campaign, his election is void.

8 O. C. D.    26